Judge ¡\hnr.s
delivered the Opinion of the Court.
This is an action of trespass, assault, battery, an(* *a^(1 imprisonment, brought'by a colored person, the plaintiff below, and the issue tried was his freedom or slavery. He was the son of a female .slave, sold in the year 1702, in the State of New York, by Philip Lott, a resident of that State, to Gen. Matthews, then a resident of the State of Georgia, and a member of Congress from the latter State. Mali hews removed the said female to Georgia, and there gave her to his daughter, whose husband afterwards came to Kentucky and sold her; and the plaintiff was born long since the sale to Matthews and the gift to Si is daughter.
The claim of the plaintiff below rests upon the 5th section of an act of the General Assembly of the State of New York, passed the 22d of February, 1788, entitled, “ an act concerning slaves,” which roads as follows:
“And be it further enacted, by the authority a-fores aid, that if am) person shall at any time, purchase or buy, or shall, as factor or agent to another, faj.e or rece{vt.f any glare, with intent to remove, export or carry such slave from this State, to any other place without this State, and there to be sold, the person so purchasing, buying, or so as factor or agent, receiving or taking a slave, with such intent as aforesaid, shall he deemed to have committed an offence against the people of this State, and shall for every such a [fence forfeit the sum of one hundred pounds, to be recovered with costs, by any person who will sue for the same, the one moiety to the people of this State, and the other moiety to the use of the person suing for the same; and the slave so purchased, bought, taken or received, shall, 'be. Immediately after he or she shall be so purchased, ho'ighl. received or taken, and hereby is, declared to he frec,:->
instructions of the circuit court-
The act of N.York of Feb. ^ siave^ur-f chased &c. withintentto ^^romthe state &c. to be there sold a^tCT^he^ir«base, whethersubsequently soki.or not.-
The onthecoiN atruction of the statute of New York stated.
*229 After some evidence was given'by the defendant below, conducing to shew that Matthews, when he bought the slave in New York, intended her for his daughter, the court below instructed the jury—
1st. That they ought to find for the defendant, unless it was proved to their satisfaction, that Gen. Matthews purchased the mother of the plaintiff in the State of New York, for the purpose or with the intent of selling her-again.
2ndly. That if they believed that Matthews purr chased said negro with intent to give her to his daughter, and not to sell her, .they ought to find for the defendant.
3rdly. That if they believed that Matthews, after his purchase of said slave, did'not sell her, but gave her to his daughter, they ought to find for the defendant.
The jury accordingly, found for the defendant, and from the judgment rendered on said verdict, the plaintiff hath appealed.
Whatever may be the true construction of the act of the State of New York, as involved in the first and second instructions of the court, the third instruction cannot be sustained. It evidently disregards what was the intention of Matthews at the time of his purchase in New York, arid supposes, that if his intention was then to remove the slave without that State to sell her, yet if he. never executed that intention, and afterwards declined selling her and gave her to his daughter, that fact, per se, deprived the slave purchased, of her freedom secured by the act. -
Now it is evident, from the express words of the act, that the right of the slave to freedom commenced “immediately after” the purchasing, buying, taking or receiving forbidden by the act; and if the purchasing or buying was done with intention to remove and sell, the freedom of tlio slave was complete, notwithstanding the purchaser or receiver might thereafter reverse that determination. Such change 6f intention, could not, thereafter, destroy the right to freedom once vested.
But the main question in the cause is involved in the two first instructions given by the court; and *230 it has been debated at the bar as that on which the cause, from the complexion of the evidence, must probably turn. It is insisted for the appellee, that the selling the slave to be exported, whether to be sold or not. comes within the provision of the act, which was intended to restrain all exportation. On the other hand it is contended, that not only an intention to export, but also an intention to sell without the State, after exportation, is necessary; and that, as there was an absence of intention to sell, and a contrary intention appears in the case óf Matthews, the slave purchased by him cannot be free.
K «marks on the section prohibiting importation of slaves and sales of them in certain oases.
The act of N.Y ork only prohibited the purchase and exportation of slaves for the purpose of being sold without the State,not their expectation for oilier vturposes.
We cannot believe that the Legislature of New' York intended wholly to prevent the exportation of slaves by the act in question, but to prevent exportation for one particular purpose.
By the next preceding section, they did intend to lay the importation of slaves under severe restrictions. For it is there enacted, that if any person shall sell any slave brought into the State after a certain period fixed by the act; he shall be liable to severe penalties, and the slave so sold shall be free. But this provision does not wholly restrain importation. For if any citizen of the State, possessed slaves at any other place without the State, and should bring them into the State, be wight keep them but could not sell them. In like manner, if any citizen of another State should remove thither, carrying with him his slaves, he might retain them but not sell them, any thing in this preceding section notwithstanding.
In like manner, if any person residing without the State, and becoming entitled to slaves existing in New York, by marriage, descent or devise, there is nothing in the fifth section, on which the appellant relies, to prevent his transporting them from the State of New York to his residence; nor is there any thing in the latter section which prohibits.any resident of New York, who held slaves, from moving to any other State or country and taking his slaves with him. Many other cases might be supposed, where both the importation and exportation of slaves were not restrained or forbidden by either of these sections.
The intention of the act was to restrain traffic in slaves to and from tho State.
Held on tho evidence that the case was not with, in tho act.
The act was remedial, and to be construed accordingly,
Effect of the construction adopted in Hew York.
We therefore conclude, that neilher importation nor exportation was intended to be entirely forbidden by the act; but that the commerce or traffic in slaves to and from that State, was that which the Legislature intended to restrain.
The practice of conveying slaves from one country to another, for the purpose of merchandize and speculation, was the.evil to which the remedy was to be applied. Hence the fourth section put an end to bringing slaves into New York for the purpose of selling, by imposing a penalty on the seller and giving the slave his freedom; and acquiring slaves in New York and transporting them for sale else where, was cut off by the fifth section, leaving those importers or exporters who did not intend to make slaves an article of merchandize abroad, but barely to remove them for other purposes, unaffected by the act.
Admitting this to be the object of the act, the case of Matthews cannot come within it, unless some words or expressions contained in the section, csfc be found embracing his case. Such expressions we cannot find within it. There mu9t, according to the act, have been a purchasing or buying, with intent to transport beyond the limits of the Slate, there to be sold, or a taking or receiving as the factor or agent of another, with intent to transport to places without the State, there to be sold before the slave could acquire a right to freedom; neither of which cases is made out by the proof against Matthews, who transported the mother of the plaintiff.
It has been insisted that this act, so far as the freedom of the slave is concerned, ought to receive a liberal construction; and especially that it ought to he construed here as it would be by the courts of New York. We have not been driven to a strict construction of the act, to come to the conclusion which we have drawn. But the consideration of the mischief to be remedied, and the remedy applied, brings out. this result, and furnishes the rulé for construing remedial statutes.
We admit that the construction of the act which has been adopted in the State of New York, ought to have great weight, and that" if a case could be *232 f'ouiui which consumed the statute into an effectual stoppage of all exportation of slaves from that Slate; we should hesitate before we run counter to it.
The act clici uot prohibit owners of slaves from removing (hem without the State, with Ibe in tuntion, and there in fact, selling them.
—It prohibited purchasing ibr this purpose.
The inhibition of llio traffic by factor or agent, was only intended to pre-
But no such case has beeh produced.
The cases cited do prove that the supreme court of that State has indulged a liberal construction in favor of freedom; but none have gone so far as to say that all exportation was prevented or forbidden by the act.
It has been urged, that if Lott had taken this slave beyond the line of New York and sold her to Matthews, she would have been free, and that of course, as Matthews came within tile limits and bought of Loft to take without the State; she ought to be free also; for it is absurd to say, that if she is taken out and sold she shall be free, and that if she is sold to be taken out, she shall not be free.
The promises from which this conclusion is drawn, cannot be admitted.
If it did appear from the act, that first taking tins slave from the State and there selling hen#y Lott, would have secured her freedom, we confess we should be inclined to think that selling her first, to be taken out of the State afterwards, ought to have the same effect.
But this is not the fact.
We cannot see any thing in the statute which forbade Lott, or any other owner of slaves resident in that State, who had not bought them for the purpose, from taking them without the bounds of the State and there selling them, where the laws permitted them to be sold; but we do seo something forbidding him or any other person from making up a cargo or drove of slaves, or even procuring a single slave by purchase, and then transporting them to be sold elsewhere. This commerce was that which the Legislature intended to destroy.
The only expressions of the statute which create any- difficulty in the construction which we have adopted, are these, “ or shall, as factor or agent- to another, take or receive any slave, with intent to remove,” &c. It may be insisted, that if Lott could hot have delivered his slave to aa agent to be *233 transported and 'sold, without giving her her freedom, he of course could not take her and sell her himself. Bat this difficulty is also removed by considering the main objects of the act.
Vent the evasion of tho main design of tho act.
j udgmenf r&versecT for an erroneous instruction against plaintiff, tho’ his evidence did not conduce to maintain his action.
Mayen for appellant; Crittenden for defendant.
- Persons were first by'themselves forbidden to purchase and buy up slaves with intent to transport and sell'them, and to prevent evasions of the statute, by using agents or factors, and thereby cutting off the plea, that such merchants were not within the letter of the act, it is added, that the taking or receiving slaves by factors or agents for the same illicit purpose, shall have the same effect as direct buying; so that however slaves might be bought, if it was done by a factor or agent, or being bought at any other time and manner, if they were received or taken by an agent or factor, for the purpose of transportation and sale, the same consequences should follow. To prevent evasions of the statute by agencies, these words were inserted.
But we see nothing in the statute which prevents ed an owner of a slave from selling him either within or without the State, in the mode in which slaves for use are sold, provided the transaction did not partake of the nature of buying for the purpose of selling again, as articles of merchandize. We therefore conclude, that the two first instructions given by the court below to the jury, are, correct; but that the third, for the reasons before given, is erroneous; and that, for this cause, the judgment must be reversed with costs, and the cause be remanded for new proceedings, not inconsistent with this opinion.